**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Criminal No. 21-CR-316** |
| | : | |
| | : | |
| **WILLIAM ROGAN REID,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, William Rogan Reid, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A) [Risk of Flight] and 3142(f)(2)(B) [Risk of Obstruction].  There are no conditions or combinations of conditions which can effectively ensure the appearance of the defendant and prevent obstruction of justice, pursuant to 18 U.S.C. § 3142(e).

The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

**The Attack on the United States Capitol on January 6, 2021.**

1.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, located at First Street Southeast, Washington, District of Columbia. During

1

the joint session, elected members of the United States House of Representatives and Senate met in the United States Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which took place on November 3, 2020.

2.     The United States Capitol is secured 24 hours a day by security barriers and USCP occupy various posts throughout the grounds. Restrictions around the United States Capitol include permanent and temporary security barriers and posts manned by USCP. USCP officers wore uniforms with clearly marked police patches, insignia, badges, and other law enforcement equipment. Only authorized people with appropriate identification are allowed access inside the United States Capitol. On January 6, 2021, the exterior plaza of the United States Capitol was also closed to members of the public.

3.     The January 6, 2021 joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Michael R. Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.     As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the United States Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the United States Capitol building and USCP were present, attempting to keep the crowd away from the Capitol building and the proceedings underway inside. As the certification proceedings were underway, the exterior doors and windows of the Capitol were locked or otherwise secured.

5.     At approximately 2:00 p.m., certain individuals in the crowd forced their way

through, up, and over the barricades, and past officers of the USCP, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by the USCP or other authorized security officials.

6.      A short time later, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. As such, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the United States Capitol, including the danger posed by individuals who had entered the United States Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the United States Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

7.      After the Capitol was breached, USCP requested assistance from MPD and other law enforcement agencies in the area to protect the Capitol, keep more people from entering the Capitol, and expel the crowd that was inside the Capitol.  Multiple MPD officers and other law enforcement officers came to assist.

8.      During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the United States Capitol

building without authority to be there.

## **Facts Specifically Related to Reid**

9.      On or about January 29, 2021, the FBI received a tip from an individual ("Person 1") stating that an individual known to Person 1 as WILLIAM ROGAN REID, who lives in Florida, was at the U.S. Capitol building on January 6, 2021.

10.     On or about February 11, 2021, the FBI interviewed Person 1 by telephone.  Person 1 said he/she knew REID personally, knew REID's voice, and had observed on REID's old Instagram account a video that appeared to have been taken by REID showing other people inside the U.S. Capitol Building on January 6, 2021.  Person 1 said that REID's voice could be heard on the video.  On or about March 7, 2021, Person 1 advised that REID had a new Instagram account under the username "blumpkinvice."

11.     Person 1 provided the FBI with a copy of Instagram posts on the "blumpkinvice" account.  One such post is a video of the rioters at the U.S. Capitol on January 6, 2021.  Later in the video, the camera is turned around, consistent with the use of a cellphone, to show an individual resembling REID.  Screenshots from this video are shown below.



12.     Another post on the "blumpkinvice" Instagram account is a video with the words "Domestic Terrorism" displayed and in which an individual resembling REID states, in part, "I want to say prison would be fun, but you're not going to incarcerate me, motherfuckers.  The 6th was a warning."  The video appears to have been created with a cellphone that REID was pointing at himself.  A screenshot from the video is below.



13.     On or about March 24, 2021, the FBI reviewed publicly available video footage taken from inside the U.S. Capitol on January 6, 2021.  In the video, an individual resembling REID appears at approximately 9 minutes and 41 seconds into the video.  Below is a screenshot from the video as well as a magnification of the video showing REID's face.



14.     The FBI compared images of the person in this video against the photograph of REID maintained by the Florida Department of Highway Safety and Motor Vehicles ("DHSMV")

6

and it appears to be the same person.  The address REID provided to the DHSMV is a residence in Davie, Florida 33328 (the "Residence").

15.     On or about March 24, 2021, the FBI reviewed the Instagram account "blumpkinvice," an open account viewable by the public.  On this account, the FBI found a link to a Discord account called "the blumpkin#4602" which is also an open account viewable by the public.  In a post dated March 11, 2021, the user of the account stated "The 6th was the breaking point for a lot of people but they're cowering in fear again because of incaerceration [sic]"  In another post dated March 11, 2021, the user of the account stated "The 6th was our Boston Tea Party."  In a post dated March 13, 2021, the user of the account stated "I rushed the Capitol" "Hi, Feds" "Now you can all relax, im the target." "I'LL FUCKIN DO IT AGAIN"



16.     Records obtained from Instagram show that the user of the "blumpkinvice" account provided a phone number ending in -3559.

17.     Records obtained from AT&T show that the subscriber of the phone number ending in -3559 is "Rogan Reid" at the Residence.  These records also show that the cellphone associated with the -3559 number is a Samsung cellphone.

7

18.     According to records obtained through a search warrant which was served on AT&T, on January 6, 2021, in and around the time of the incident, the cellphone associated with the phone number ending in -3559 was identified as having utilized a cell site consistent with providing service to a geographic area that includes the interior of the U.S. Capitol building.

19.     On March 26, 2021, Magistrate Judge G. Michael Harvey in the United States District Court for the District of Columbia authorized a criminal Complaint and corresponding arrest warrant charging REID with: (1) knowingly entering or remaining in any restricted building or grounds without lawful authority to do so and engaging in disorderly or disruptive conduct therein, in violation of Title 18, United States Code, Section 1752(a)(1) and (2); and (2) willfully and knowingly uttering loud, threatening, or abusive language, or engaging in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and (G).

20.     On March 29, 2021, U.S. Magistrate Judge Zia M. Faruqui in the United States District Court for the District of Columbia issued a search warrant for cellsite information for the cellphone associated with the phone number ending in -3559, believed to be used by REID. Records obtained pursuant to the search warrant indicated that the cellphone was being kept at the Residence.

21.     On March 30, 2021, U.S. Magistrate Jared M. Strauss in the United States District Court for the Southern District of Florida issued a search warrant for the Residence and any electronic devices contained therein containing evidence relating to REID's commission of the Original Offenses.

22.     On April 1, 2021, at approximately 5 a.m., cellsite data for REID's cellphone indicated the phone utilized a cell site consistent with providing service to a geographic area that includes the Residence.  At approximately 6:05 a.m., cellsite data for REID's cellphone continued to indicate that the phone was identified as having utilized a cell site consistent with providing service to a geographic area that includes the Residence. At approximately 6:13 a.m., law enforcement arrived at the Residence and announced to its occupants that it had an arrest warrant for REID and a search warrant for the Residence.

23.     Although the cellular phone had been emitting regular signals approximately every 15 minutes, at 6:21 a.m. (approximately 8 minutes after law enforcement announced their presence at the door of the Residence) a notification was received from the cell network indicating the phone was either turned off or out of service.  No signals were received from the phone after 6:05 a.m.

24.     REID exited the Residence at approximately 6:30 a.m. and was arrested.  Law enforcement proceeded to execute the search warrant.  As part of executing the search warrant, law enforcement advised REID that the search warrant extended to electronic devices within the Residence and asked where REID's cellphone was located.  REID initially claimed that he had left his cellphone at a friend's house but later claimed that he did not know where the cellphone was.

25.     Law enforcement proceeded to search the Residence.  Upon entry, law enforcement observed that the Residence was filled with an excessive accumulation of items, consistent with a persistent refusal to discard or part with possessions.  Nevertheless, in the room identified as REID's bedroom, law enforcement found, in open view on a dresser, an iPad and a wallet containing REID's personal items.  In addition, law enforcement found a charger for a Samsung cellphone still plugged into the wall next to REID's bed.  Law enforcement proceeded to search

the Residence as thoroughly as possible in light of its condition and the volume of materials in each of the rooms, but was unable to find REID's cellphone after a diligent search.

26.     REID was subsequently transported to the FBI Office for processing.  Thereafter, REID was transported to the Broward County Jail.  During the ride, in an unsolicited statement, REID voluntary told law enforcement that early in the morning on April 1, 2021, he had posted a message on social media to the effect that he was going to destroy his cellphone because the FBI was "after him."  REID also stated that the post was meant as an April Fool's joke.

27.     On April 2, 2021, the FBI accessed a Discord channel that is linked by REID's Instagram page.  On the Discord channel, the FBI observed that at approximately 1 a.m. on April 1, 2021, a member of the channel posted an image of a conversation with an account called "The Blumpkin Official" which shares a similar name with REID's account.   In the embedded conversation, "The Blumpkin Official" stated "Fuck, cops outside. Alright, boys. Wish me luck. Lots of vehicles" and "Destroying phone now."  A screenshot of this embedded conversation is shown below.



**Procedural History**

28.     On April 2, 2021, defendant appeared before a U.S. Magistrate in the Southern

District of Florida for an initial appearance and removal to this District.  At that time, defendant

was detained pursuant to 18 U.S.C. § 3142(d)(1) because at the time of the offense charged in the

District of Columbia, defendant was on release pending trial for a felony charge of aggravated

stalking in Palm Beach County, Florida, Case No. 2020CF002624AMB ("Palm Beach case").

29.     On April 5, 2021, U.S. Magistrate Judge Zia Faruqui authorized an amended

criminal complaint adding a felony charge of obstruction by corruptly altering, destroying,

mutilating, or concealing a record, document, or other object, in violation of 18 U.S.C. §

1512(c)(1).

30.     On April 12, 2021, defendant appeared via zoom from federal custody for a bond

revocation hearing in the Palm Beach case.  After hearing arguments from the State Attorney and

Reid's counsel, the court revoked Defendant's state bond.

11

31.     On April 14, 2021, defendant appeared before the U.S. Magistrate Judge in the Southern District of Florida for a status conference.  At that time, the matter was reset to April 16, 2021.

32.     On April 16, 2021, defendant appeared before the U.S. Magistrate Judge in the Southern District of Florida for a removal hearing and a detention hearing.  At that time, defendant waived the right to have a removal hearing and stipulated to a $250,000 corporate security bond with a right to revisit, but did not have a detention hearing.

33.     On April 23, 2021, defendant appeared via zoom before the U.S. Magistrate Judge in the District of Columbia.  At that time, counsel was appointed for defendant and a detention hearing was scheduled for April 28, 2021.  The same day, U.S. Magistrate Judge G. Michael Harvey issued an order delaying transport of the defendant to Washington, D.C. absent a further order of the Court.

34.     Also on April 23, 2021, defendant was indicted on one violation of 18 U.S.C. § 1512(c)(1) (Corruptly Altering, Destroying, Mutilating or Concealing a Record, Document, or Other Object); one violation of 18 U.S.C. § 1752(a)(1)(Entering and Remaining in a Restricted Building or Grounds); one violation of 18 U.S.C. § 1752(a)(2)(Disorderly and Disruptive Conduct in a Restricted Building or Grounds); one violation of 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct in a Capitol Building), and one violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building.

## Argument

35.     The Government submits that the evidence described above, and which forms the basis for the obstruction charge against defendant, demonstrates that if released on bond, there is

a serious risk that the defendant will obstruct or attempt to obstruct justice, and that he cannot be expected to comply with any bond conditions which this Court might set.  As described above, after learning that the FBI had arrived at his residence to execute a search warrant, defendant either turned off or damaged his cellphone, so that it stopped emitting GPS tracking signals.  When asked about his phone during the execution of the search warrant, defendant lied – first claiming that the phone was at a friend's house and then claiming that he did not know where it was.The defendant clearly understood the significance of his cellphone to the criminal investigation.  In the social media posts described above, defendant made clear that he was aware the FBI was investigating him for his activities at the U.S. Capitol on January 6.  And in the supposed "joke" that he posted the night before his arrest, defendant specifically linked the arrival of law enforcement at his house with the destruction of his phone, demonstrating the link in his mind between the phone and the criminal investigation.

36.     Accordingly, if released, there is a serious and specific risk that defendant will make further efforts to hide or destroy his cellphone.  Moreover, given that defendant is now aware that incriminating evidence exists on his social media accounts, there is a serious risk that if released, defendant will use the opportunity to attempt to destroy that evidence as well.

37.     More broadly, the defendant's conduct on January 6, and his subsequent social media posts demonstrate both a lack of remorse and a contempt for law enforcement.  For example, in one of his Instagram posts, the defendant appears to be speaking directly to law enforcement when he says "you're not going to incarcerate me, motherfuckers."  In a March 13, 2021 post, defendant specifically refers to the "Feds" and says "I'll fuckin do it again."  These posts speak to

the defendant's mindset in which destruction of evidence, or other acts of obstruction, are not just acceptable but to be encouraged.

38.    Defendant's criminal history also demonstrates both a contempt for rules and a willingness to disobey court orders.  First and foremost, the defendant committed his charged offenses while on pre-trial release from a felony charge in the Palm Beach case, which resulted in his state bond being revoked.  Defendant's willingness to violate the Florida court's bond conditions can give this Court no comfort that he would abide by any conditions this Court might set.

39.    Nor was this the first time Defendant has violated court orders.  Defendant failed to appear as required in a 2005 criminal mischief/damage to property case in Florida state court, and his probation in that case terminated unsuccessfully.   Defendant had a 2008 charge for driving while license suspended.  Though the adjudication of that charge was withheld, the conduct still suggests an unwillingness to obey the rules.  In 2009, defendant was charged with Battery in a domestic violence case, and though the case was ultimately dismissed, defendant failed to appear at his arraignment and a capias warrant had to be issued.  It is also worth noting that defendant's current felony charge for aggravated stalking appears to be based on a violation of a previous injunction for protection against stalking – another court order that defendant appears to have disobeyed.

40.    In addition to these aspects of the defendant's history and characteristics is the fact that defendant has no current employment, has no ties to the District of Columbia, and has a history of mental health issues, including one prior hospital commitment pursuant to the State of Florida's

14

Baker Act.  At the same time, the weight of the evidence against the defendant is extremely strong.

All of these factors pose a risk of nonappearance and further obstruction of evidence.

## **<u>CONCLUSION</u>**

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793

By:      /s/ *Robert Juman*
_____
Robert Juman
Assistant United States Attorney
Bar No. NJ 033201993
United States Attorney's Office
Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (786) 514-9990
E-mail: Robert.juman@usdoj.gov

15

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on April 27, 2021.

/s/ *Robert Juman*
Robert Juman
Assistant United States Attorney