UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM REID,<br><br>          Defendant. | Crim. Action No. 21CR316(DLF) |

**WILLIAM REID'S REPLY TO THE GOVERNMENT'S RESPONSE TO THE DEFENSE MEMORANDUM IN AID OF SENTENCING**

William Reid respectfully submits this brief Reply to the government's Response to his Memorandum in Aid of Sentencing. In this Reply, Mr. Reid will address the following points raised in the government's Response: 1) Contrary to the government's suggestion, Mr. Reid did not "recruit" others to join him in attending the January 6 rally and his decision to attend was not planned well in advance; 2) Even assuming *arguendo* that non-judicial proceedings can involve the administration of justice for purposes of the USSG § 2J1.2(b),[1] as a factual matter, the 8-level enhancement does not apply because Mr. Reid did not destroy property "in order to obstruct the administration of justice."

**1. Contrary to the government's insinuation, Mr. Reid did not pre-plan an attack on the Capitol.**

---

[1] For all other points raised in the government's Response, Mr. Reid rests on his initial Memorandum, incorporating Judge McFadden's Opinion in *United States v. Seefried*. For the reasons set forth that opinion, Mr. Reid contends that that the substantial enhancements involving "administration of justice" can only apply to judicial or related proceedings.

The government attempts to assign nefarious meaning to Mr. Reid's messages with an individual about January 6. Yet again, the government engages in hyperbole, characterizing Mr. Reid's casual message "you should meet us," as an effort to "recruit" people.

In fact, Mr. Reid was in North Carolina visiting family and decided that because since he would be closer to D.C. than Florida, he would travel to the rally. There was nothing sinister or conspiratorial about his decision to attend the rally, as thousands of Americans decided to do after being invited by the person who *did* recruit people to attend—the former President. Mr. Reid did not pre-plan any attack, he did not travel with weapons or combat gear, and he did not plan to meet up with anyone at the rally, let alone any members of any organized group. As described in the defense Memo, he traveled with his brother, who did not enter the Capitol with him. The government cannot dispute these essential and mitigating facts, which merit consideration in the Court's sentencing determination.

**2. Mr. Reid did not destroy the TV and water cooler "in order to obstruct the administration of justice."**

Even taking the government's hyperbolic characterization of Mr. Reid's conduct as true and assuming *arguendo* that Section 2J1.2 "administration of justice" enhancements apply as a legal matter, 2J1.2(b)(1)(B) does not apply factually. This is because it is abundantly clear from Mr. Reid's own narrations—which the government cites repeatedly in its memo—that Mr. Reid did not destroy the water cooler and TV "in order" to obstruct the administration of justice.

The government cites an inapposite case that does not address the enhancement at issue here for the proposition that Mr. Reid can have multiple intents for the enhancements to apply.[2] But the government cannot deny that the guideline makes clear that in order for the enhancement to apply, at a minimum, Mr. Reid must have destroyed the property *with an intent to obstruct the administration justice. See United States v. Calvert*, 511 F.3d 1237, 1240 (9th Cir. 2008)(recognizing that 2J1.2(b)(1)(B) "only applies where the defendant acts with an intent to obstruction the administration of justice" and finding that defendant's intent to physically harm a witness in retaliation triggered the enhancement).

There is simply no evidence that Mr. Reid damaged the TV and water cooler in order to accomplish any purpose, let alone to obstruct the administration of justice. Indeed, the government acknowledges that Mr. Reid damaged the cooler and TV hidden from view, "confident that there would be no security cameras there,"[3] and noted that Mr. Reid later described damaging in the items in a message post. His words in the post, while regrettable, are important because they show that he did not destroy the items i*n order to obstruct anything*. To the contrary, he describes becoming frustrated and says, "I lost mysh*t." Notably, he did not say anything to suggest that he damaged the items in order to stop the certification of the vote, which, according to the government constitutes the "administration of justice."

---

[2] ECF. No. 40 at 16.
[3] ECF. No. 35 at 19-20.

On this score, the government might have a better argument if Mr. Reid had hurled the water cooler towards a legislator on his or her way to the vote count, or had he hurled the refrigerator onto the Senate floor while the vote was taking place.[4] The government would be in a better position if Mr. Reid had damaged an item necessary to the counting of the votes, or if he had physically assaulted police officers while attempting to advance towards the Chamber. Perhaps the government would have the better argument if Mr. Reid had explained in one of his many lengthy confessionals on social media that he had damaged the TV and cooler as part of an effort to stop the vote count. But the government does not any have any of that here. There is absolutely *no nexus* between the TV and cooler and the certification of the vote. The Court should reject the government's invitation to speculate as to Mr. Reid's intent in order to pile on an enhancement, which adds approximately *four years* additional imprisonment to the guideline range.

---

[4] *C.f. United States v. Rubenacker*, 21CR193 (BAH) (2J1.2(b)(1)(B) applied where defendant chased Officer Goodman through part of the Capitol all the way up the stairs to near the entrance of the Senate Chamber directly past where lawmakers had just retreated in a crowd shouting "where are they counting the fucking votes." While by the entrance of the Senate Chamber, he shouted "Go arrest the Vice President"!.Video captures Rubenacker standing in front of the mob confronting a line of police officers pointing his finger and shouting at law enforcement officers. Video also captured Rubenacker pushing his way toward the Senate Chamber and forming a line to confront officers and pushing forward while officers repeatedly tried to repel Rubenacker and the crowd. Rubenacker entered the Capitol twice, both times pushing toward the Senate Chamber. Rubenacker also physically assaulted officers trying to repel the crowd:  He swung a plastic bottle and hitting an officer on the head and throwing liquid from his bottle on a cluster of officers engaging with another officer. He left only after being sprayed with chemical irritant spray. Finally, though not relevant to the enhancement, he smoked marijuana while inside the building. *See* ECF. No. 56, Gov. Sentencing Memo. For all of this, Chief Judge Howell imposed a sentence of 41 months.

Finally, the government appears to argue that because Mr. Reid entered the Capitol *generally* with the intent to obstruct the certification of the vote that the guideline applies. The extension of this argument would mean that the exception would swallow the whole and that the enhancement would apply to every defendant who entered the Capitol and yelled threats or damaged property. S*ee United States v. Wood*, 1:21CR223(APM)(Judge Mehta finding administration of justice enhancements apply as a legal matter but declining to apply §2J1.2(b)(1)(B) despite evidence that defendant yelled threats and pushed officers).

The government should not be permitted to add facts into the record that simply do not exist and which are undercut by the defendant's own words—words which the government has selectively used to support its request for an excessive sentence.

## Conclusion

For these reasons and those set forth in the defense Memorandum in Aid of Sentencing, Mr. Reid respectfully submits that a sentence of 18 months falls within the correctly calculated guideline range and represents a fair application of the sentencing factors.

Respectfully Submitted,

A.J. KRAMER
FEDERAL PUBLIC DFENDER


\_\_\_\_/s/_____
Elizabeth Mullin
Assistant Federal Public Defender

5

Office of the Federal Public Defender
 for the District of Columbia
625 Indiana Avenue, N.W.
Washington, D.C. 20004